UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOE ALEXANDER

                Plaintiff,

v.                                             Case No. 3:19-cv-00688-JAG

DIET MADISON AVENUE, *et al.*,

                Defendants.

**PROPOSED INTERVENORS' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE AND TO SEAL CONFIDENTIAL INFORMATION**

Proposed Intervenors, The Interpublic Group of Companies, Inc. ("IPG") and The Martin Agency ("Martin" and, with IPG, the "Proposed Intervenors"), pursuant to Local Civil Rules 5 and 7, submit this memorandum in support of their motion for leave to intervene for the limited purpose of seeking the entry of an order sealing portions of the Complaint filed in this action, and a protective order requiring that further filings also redact information that would expose the identity or identities of Plaintiff's accuser(s). The Proposed Intervenors' proposed redacted complaint (the "Proposed Complaint") is attached as Exhibit A to the Declaration of Maura J. Wogan, dated October 8, 2019 (the "Wogan Decl.").

## PRELIMINARY STATEMENT

By his Complaint, Plaintiff, who was the subject of harassment allegations that were later reported in the press, brings suit for defamation and related claims against an anonymous Instagram account and an advertising industry publication, including the reporter, who reported on him. In doing so, however, Plaintiff publicly identifies and then continues to harass one of the women who came forward to report his behavior, and does so in direct violation of the non-disclosure agreement he signed at his termination. These allegations are gratuitous—Plaintiff

could have filed the Complaint in a way that complied with his obligations and respected her privacy. He chose not to. Accordingly, the Proposed Intervenors seek leave to intervene in this action for the limited purpose of redacting from the Complaint, and any future public filings, identifying information about Plaintiff's accusers. They do so not only to protect their contractual rights, but also to protect the employee who came forward, so that she and others are free of any fear of retaliation in speaking out against harassment.

## FACTUAL ALLEGATIONS

This case concerns allegations of defamation by Plaintiff, an advertising professional and former Chief Creative Officer at Martin (Dk. No. 1 ¶ 1), who was terminated in December 2017 by Martin (*id.* ¶ 32) following allegations of harassment. *Id.* ¶¶ 9, 36, 46, 51, 64-66.

**Plaintiff Files this Action**

Plaintiff's complaint in this action is that, starting on November 7, 2017, DietMadisonAvenue ("DMA")—an anonymous Instagram handle allegedly run by a collective of individuals in the advertising industry (*id.* ¶ 7)—published a series of Instagram posts and stories accusing him of sexual harassment. *Id.* ¶¶ 30, 32. He further alleges that, on December 7, 2017, after Plaintiff was terminated from Martin, the advertising industry publication Adweek (*id.* ¶¶ 10-11) "published a damning indictment of [Plaintiff]" claiming that he was terminated from Martin "after multiple female employees filed sexual harassment complaints" against him (the "Adweek Article"). *Id.* ¶¶ 61, 62. The Complaint alleges that the Adweek Article falsely claimed that he not only made inappropriate and belittling comments about female colleagues, but harassed women for decades, including passing his room key to colleagues on business trips. *Id.* ¶ 64. The Complaint traces the source of both DMA's and Adweek's knowledge to a former Martin employee. *Id.* ¶¶ 8-9, 30, 64, 66.

One day after the Complaint was filed, another industry publication, Advertising Age, ("AdAge"), ran a story detailing its allegations and quoting Plaintiff and his counsel. *See* Wogan Decl., Ex. B (the "AdAge Article"). In the article, Plaintiff's attorney also noted that his client intended to take legal action against "IPG, [Martin] and certain of their agents and employees" within the next thirty days, apparently based on the same events underlying the Complaint. *Id.*

**The Complaint Exposes Confidential Information**
**In Violation of Plaintiff's Non-Disclosure Agreement**

The Complaint publicly identifies the woman who filed the sexual harassment complaint against Plaintiff that immediately preceded his termination. *See id.* ¶ 36 n.18 (the "Accuser"). Plaintiff also includes gratuitous allegations that comment on the Accuser's body and manner of dress. *Id.* ¶ 52. These inclusions are not material to Plaintiff's claims. Plaintiff brings no claims in this action against IPG, Martin or the Accuser, and the Accuser is not alleged to be a source for DMA or Adweek. *See generally* Dk. No. 1  Plaintiff instead claims that a former Martin employee made false statements to DMA about him (*id.* ¶ 30), which DMA thereafter posted on their Instagram account (*id.* ¶¶ 69-70), and that this same employee was the source of many of the statements in the Adweek Article. *Id.* ¶ 64; *see also* Wogan Decl., Ex. B ("For the article, Adweek interviewed 10 women and one man," including two former employees of Martin who are identified in the article).

Plaintiff's public allegations also violate the confidential separation agreement signed by Plaintiff at his termination from Martin. *See* Wogan Decl., Ex. C (the "Agreement"). Importantly, this Agreement was signed by Plaintiff on December 12, 2017—*after* DMA posted about him both on November 7, 2017 and immediately following his termination (*id.* ¶¶ 30, 70-71), *after* he was terminated on December 1, 2017 (Dk. No. 1 ¶ 49) and *after* December 7, 2017 when the Adweek Article was published (*id.* ¶ 62)—in other words, *after* the key events that

3

underlie action. The Agreement includes a full release of claims against the Proposed Intervenors and their agents and employees as of that date (*see* Wogan Decl., Ex. C ¶ 3), a non-disparagement provision (*id.* ¶ 10), and, as particularly relevant here, placed strict obligations of confidentiality and non-retaliation on Plaintiff (*see id.* ¶ 10 and Attachment A), which were essential to the Proposed Intervenors in entering the Agreement given the circumstances of his termination. *See id.* at Attachment A. Specifically, Attachment A to the Agreement requires Alexander to maintain the confidentiality of: (1) the identity of any accusers; (2) the allegations made against him; and (3) the company's investigation. *See id.* at Attachment A.[1]

In filing the Complaint, Plaintiff violates *all* of these prohibitions. Plaintiff identifies the Accuser by her full name (Dk. No. 1 ¶ 36 n.18; *see also id.* ¶ 41), outlines the investigation—albeit from Plaintiff's perspective (*id.* ¶¶ 34-39) and details allegations made against him by multiple accusers. *Id.* ¶¶ 8-9, 36, 46, 51-52. Perhaps most egregiously, Plaintiff, in his Complaint, continues to harass and retaliate against the Accuser, also in violation of the Agreement (*see* Wogan Decl, Ex. C at Attachment A (prohibiting "retaliation", which includes "disparaging remarks about the [Accuser]" or indirectly communicating with the Accuser)) by making inappropriate statements about her body and manner of dress. *Id.* ¶ 52.[2]

At the time Plaintiff filed his Complaint, he was aware of the Agreement and his obligations thereunder. Plaintiff could have filed the Complaint without violating the agreement.

---

[1] This prohibition extends to Alexander's "attorney(s)" who must also agree to the same confidentiality and non-retaliation provisions in order to receive this confidential information. *See id.*

[2] Although the Proposed Intervenors' make this motion solely to seal the identity of the Accuser, the Proposed Intervenors do not waive, and instead hereby reserve all rights under both this Agreement and the confidential settlement agreement executed by Plaintiff in 2013 that is also referenced in the Complaint. *See* Dk. No. 1 ¶ 9.

4

Indeed, even had he believed that the information was not properly confidential or he was not bound by the Agreement, he could have followed Local Rule 5 and filed the information provisionally under seal subject to a determination by this Court. Plaintiff chose not to do either. He instead made the unilateral decision to file publicly in violation of the Agreement.

**The Proposed Intervenors Act Quickly to Preserve the Accuser's Anonymity**

As Plaintiff acknowledges, IPG has adopted a strong policy prohibiting sexual harassment. Dk. No. 1 ¶ 26. Although Plaintiff maligns that policy, on October 30, 2017, IPG's Chairman, Michael Roth, circulated an internal memo to each of the more than 50,000 IPG employees around the globe committing to "A Workplace Free from Harassment." *Id.* IPG's Code of Conduct also prohibits harassment in any form and encourages employees to make complaints of harassment not only to Human Resources, but by anonymous call to its "Interpublic Alertline". Wogan Decl., Ex. D.

Plaintiff is aware of these policies. He not only acknowledges them in his Complaint (Dk. No. 1 ¶ 26), but confirms that prior harassment allegations leveled against him were settled in 2013 by a confidential settlement agreement (*id.* ¶ 9). In addition, Plaintiff was informed, upon being investigated in 2017, that his accuser's name should not be provided to others, to protect her confidentiality (*id.* ¶ 36), and that he was not to contact or otherwise retaliate against her or anyone else who had stepped forward. *Id.* ¶ 44. His attorney also is aware of these policies, having sued IPG and a subsidiary on behalf of another former employee who had been accused of harassment just last year. *See generally Perrott v. The Interpublic Group of Cos.,* 3:18-cv-00737-REP (the "*Perrott* Action"). In that case, the Court, over counsel's objection, entered a protective order that protected the identities of plaintiff's accusers. *See* Wogan Decl., Ex. E (*Perrott* Action, Dk. Nos. 78 and 79, dated April 3, 2019).

Yet, despite the terms of the Agreement, which included an obligation to inform the company of any "accidental or inadvertent disclosure" of confidential information (Wogan Decl., Ex. C at Attachment A), and Plaintiff's and his counsel's awareness of IPG's commitment to maintaining its employees' privacy, the Proposed Intervenors were informed of this action only when they were contacted by AdAge for comment before the publication of its article. Wogan Decl. ¶ 4. Upon receiving this news, the Proposed Intervenors immediately acted to preserve the Accuser's privacy. The Proposed Intervenors not only successfully convinced AdAge not to identify the Accuser by name in the article (*id.*), but, upon its publication, immediately secured AdAge's agreement to redact the copy of the Complaint embedded therein to remove any information that could identify the Accuser. *Id.* The version of the Proposed Complaint largely follows these same redactions. *Compare* Wogan Decl., Ex. A *with id.*, Ex. B.

Prior to filing this motion, counsel for the Proposed Intervenors reached out to Plaintiff's counsel to remind Plaintiff and his counsel of their obligations under the Agreement, and to request that the Complaint be withdrawn and replaced by a version that redacted this identifying information. Wogan Decl. ¶ 6. In response, counsel repeated his intention to file an action against the Proposed Intervenors, but, citing a coming trial that was about to begin, claimed to be unable to provide any response to the request for redaction. *Id*. As of the date of filing, counsel has not responded to this request.

This motion followed, only after the Proposed Intervenors consulted with counsel for the Accuser, seeking her consent. *See id.* ¶ 7. The Accuser has permitted the Proposed Intervenors to proceed on her behalf. *Id.*

# ARGUMENT

## I. IPG and Martin Should be Permitted to Intervene

Intervention is governed by Fed. R. Civ. P. 24, which permits intervention, on a timely motion, either as of right (*see* Fed. R. Civ. P. 24(a)(2)) or by permission of the Court. *See* Fed. R. Civ. P. 24(b)(1)(2). As the Fourth Circuit has noted, "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process." *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (internal citation omitted). Here, following this guidance from the Fourth Circuit, intervention is warranted either as of right or by permission of the Court.

### A. The Proposed Intervenors Should be Permitted to Intervene as of Right

Intervention is allowed as a matter of right, upon timely application, when the applicant (i) "claims an interest relating to the property or transaction that is the subject of the action," (ii) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (iii) the applicant's interest is not adequately represented by existing parties. Fed. R. Civ. P. 24(a)(2); *see also Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir. 1981). In addition, courts in this Circuit have routinely permitted interested parties to intervene for limited purposes, including to participate in motion practice related to sealing. *See, e.g., Stone v. Univ. of Md.*, 855 F.2d 178, 180 (4th Cir. 1988) (allowing intervention for limited purpose of challenging sealing order); *see also Sch. Bd. of City of Newport News v. T.R. Driscoll, Inc.*, No. 4:11 Civ. 79, 2011 WL 3809216, at *3 (E.D. Va. July 29, 2011), *report and recommendation adopted*, 2011 WL 3702421 (E.D. Va. Aug. 22, 2011) (citing cases).

### 1. The Motion is Timely

In determining whether an application is timely, "[a] reviewing court should look at how far the suit has progressed, the prejudice which delay might cause other parties, and the reason for the tardiness in moving to intervene." *Gould v. Allegheny Beverage Corp.*, 883 F.2d 281, 286 (4th Cir. 1989). The most important consideration in passing on the application for intervention is whether the delay has prejudiced other parties. *See Hill v. Western Elec. Co.*, 672 F.2d 381, 386 (4th Cir. 1982); *Springs Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980).

The Complaint is only recently filed, the Docket indicates that none of the defendants has served or noticed an appearance, and no discovery has taken place. Moreover, in the short time that has elapsed since the Complaint was filed, the Proposed Intervenors have taken steps to resolve this issue short of intervention, or, at least, to limit any further exposure. These actions have included securing a commitment from AdAge not to publish the Accuser's name in the AdAge Article and to redact any identifying information from the copy of the Complaint embedded therein (Wogan Decl. ¶ 4), and writing to Plaintiff's counsel to demand that Plaintiff abide by his contractual obligations and remove any identifying information from the docket. *Id.* ¶ 6. Given the brief period that has elapsed since filing and actions of the Proposed Intervenors in the interim, the motion is timely. *See T.R. Driscoll, Inc.*, 2011 WL 3809216, at *2 (holding that motion to intervene filed two months after filing and one month after intervenor received notice was timely).

### 2. The Proposed Intervenors have an Interest in Confidentiality

The Proposed Intervenors also have a clear interest in this action. As courts have noted, "Rule 24(a) does not explain when an interest in the action is sufficient to justify intervention." *T.R. Driscoll, Inc.*, 2011 WL 3809216, at *3. The Supreme Court, however, has confirmed that

"[w]hat is obviously meant there is a significantly protectable interest." *Donaldson v. U.S.*, 400 U.S. 517, 531 (1971); *see also JLS, Inc. v. Pub. Serv. Com'n of W. Virginia*, 321 Fed. App'x 286, 289 (4th Cir. 2009); *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991).

The Proposed Intervenors bring this action to protect an interest that is undoubtedly "significantly protectable": the Accuser's privacy, which they bargained for in the Agreement. As noted above, the Complaint identifies her by name (Dk. No. 1 ¶ 36 n.18; *see also id.* ¶ 41) and describes allegations she made against Plaintiff as part of the Proposed Intervenors' investigation. *Id.* ¶¶ 36, 50-51. Most egregiously, the Complaint also continues to harass and/or retaliate against her by making gratuitous and wholly inappropriate statements about her body and manner of dress. *Id.* ¶ 52.

Courts across the country have consistently found that the sort of privacy interests implicated by the Complaint warrant intervention. *See Winemiller ex rel. T.W. v. Judd*, No. 8:13 Civ. 2995, 2015 WL 3901623, at *6 (M.D. Fla. June 24, 2015) (granting motion to intervene for limited purposes of sealing docket entries containing the names of class members); *Tarazi v. Oshry*, No. 2:10 Civ. 793, 2011 WL 1326271, at *6 (S.D. Ohio Apr. 4, 2011) (granting motion to intervene, both as of right and permissive intervention, by blog contributor and confidential source for limited purpose of seeking protective order against disclosure of identities); *Torah Soft Ltd. v. Drosnin*, No. 00 Civ. 0676, 2001 WL 1425381, at *2 (S.D.N.Y. Nov. 14, 2001) (finding that applicant "John Doe" had "established an interest in the subject matter of the current action" when he sought to prevent disclosure during discovery in underlying litigation of a memorandum that potentially contained his identity and other allegedly "confidential information" about him); *Blum v. Schlegel*, 150 F.R.D. 38, 39 (W.D.N.Y. 1993) (granting

intervention of third party for limited purpose of protecting her interest in confidentiality of information sought by plaintiff in discovery).

The Proposed Intervenors also have a contractual interest in the action. IPG and Martin, in terminating Plaintiff, specifically bargained for protections for themselves and their employees by insisting on strict confidentiality. *See* Wogan Decl., Ex. C ¶ 10 and Attachment A. They did so because it was important to them and to their policies against harassment and retaliation. *See* Wogan Decl., Ex. D. The protections built into the Agreement were thus intended to further those policies. Courts regularly permit non-parties to intervene to protect confidential information (*see Bayer CropScience Inc. v. Syngenta Crop Prot*., LLC, 979 F. Supp. 2d 653, 656-57 (M.D.N.C. 2013) (sealing confidential business information); *see also* Nixon, 435 U.S. at 598), including information that is the subject of a confidential settlement agreement. *See Kidney Dialysis & Transplant Grp. PLLC v. Gouda*, No. 1:15 Civ. 239, 2016 WL 9131484, at *1 (N.D. W.Va. Mar. 29, 2016) (granting motion to intervene to bar plaintiff from "introducing information protected by a confidential settlement agreement and/or placed under seal); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp*., 307 F.3d 1206, 1212 (9th Cir. 2002) (noting that courts consistently grant protective orders to protect confidential settlement agreements*); Bank of Am., N.A. v. Hensley Properties, L.P*., No. 07 Civ. 1584, 2008 WL 2724875, at *4-5 (E.D. Cal. July 11, 2008) (granting motion to seal settlement agreement with third-party). This Court should permit the Proposed Intervenors to intervene in this action for the limited purpose of doing the same.

Finally, Plaintiff's counsel has indicated that Plaintiff will, in the next thirty days, bring an action against the Proposed Intervenors and, potentially, their agents and/or employees stemming from the same events that underlie the Complaint. *See* Wogan Decl., Ex. B. Any

action Plaintiff may bring would undoubtedly force the Proposed Intervenors to produce documents and information that identify the Accuser. And, the Proposed Intervenors—as IPG did in the *Perrott* Action (*see* Wogan Decl., Ex. D)—would seek a protective order to keep this identifying information confidential. Should this information remain public in this action, it would unfairly moot the Proposed Intervenors' strong interests in enforcing their contractual rights and protecting the accuser's privacy. Thus, the Proposed Intervenors have an interest in this case based either on their anticipated defense of Plaintiff's claims against them or their own affirmative claims under the Separation Agreement. *See T.R. Driscoll*, 2011 WL 3809216, at *3 (finding substantial interest where underlying issue lay "at the heart of both" the present action and any potential action by the intervenor).

### 3. The Confidentiality Interest Would be Impeded

There is also little doubt that these interests would be wholly impeded by allowing the Complaint to go unchecked. Indeed, the Complaint already violates both the privacy interest of the Accuser and the contractual interest of the Proposed Intervenors. The Proposed Intervenors seek to intervene now only to stem the damage as much as possible.

### 4. The Proposed Intervenors are not Adequately Represented

Finally, the Proposed Intervenors are not adequately represented by the parties in the action. "[T]he Supreme Court has described the applicant's burden on this matter as 'minimal.'" *JLS, Inc.*, 321 F. App'x at 289 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Here, the Proposed Intervenors easily meet this minimal burden. They are very clearly directly adverse to Plaintiff—both in his determination to file the Complaint and in that he has announced his intention to proceed against them on claims that stem out of the same events. *See* Wogan Decl. ¶ 6. And, the defendants, who have not yet been served or appeared,

11

lack the privacy and contractual interests that concern the Proposed Intervenors. *See Kalos v. Wisenbaker Holdings, LLC*, No. 1:10 Civ. 1335, 2011 WL 761239, at *3 (E.D. Va. Feb. 23, 2011) (noting that a showing that representation "may be inadequate" was sufficient to meet burden and holding that defendant that had not yet appeared was unlikely to adequately represent intervenor). Accordingly, intervention should be granted as of right.

### B. In the Alternative, this Court Should Permit Intervention

Even if not as of right, a court may permit intervention, on a timely motion, where a third party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Should this Court determine that the Proposed Intervenors lack the right to intervene, the Court should still permit intervention as of right for the limited purpose of sealing portions of the Complaint.

Pursuant to this provision, intervention should be granted where a motion is timely and the intervenor "has a claim or defense that shares with the main action a common question of fact." Fed. R. Civ. P. 24(b)(1)(B). As noted in Section I(A)(1), *supra*, this motion is undoubtedly timely. Accordingly, all that is required is that the Proposed Intervenors share a common question of fact with the action. However, where, as here, an intervenor is not seeking to become a party in the action, courts have relaxed the commonality requirement. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3rd Cir. 1994) ("[S]pecificity, e.g., that the [intervenors'] claim involve ... the same legal theory [that was raised in the main action], is not required when intervenors are not becoming parties to the litigation"). Here, for the reasons stated above, even should this Court determine that the Proposed Intervenors lack a sufficient interest in the action, they have a common interest. *See Cooper Techs., Co. v. Dudas*, 247 F.R.D. 510, 516 (E.D. Va. 2007) (interest in litigation was sufficient to grant both intervention as

of right and permissive intervention). Accordingly, even if the Court should determine not to find that the Proposed Intervenors may intervene as of right, they should still be permitted to intervene.

## II. This Court Should Seal Portions of the Complaint

This Court should also seal those portions of the Complaint that identify the Accuser, replacing the publicly-filed version with the Proposed Complaint.[3] *See* Wogan Decl., Ex. A.

While the Proposed Intervenors understand that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents," that right "is not absolute and may be overridden in appropriate circumstances. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978). In determining whether to seal, a court must first determine whether the common law or First Amendment right of access applies to the document. *See Stone*, 855 F.2d at 180. While the presumption of access under the common law is not absolute and its scope is a matter left to the discretion of the District Court, "[w]hen the First Amendment provides a right of access, a district court may restrict access 'only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest.'" *Virginia Dep't of St. Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (internal quotations omitted).

For the reasons stated below, only a common law right of access attaches to the Complaint; however, the Proposed Intervenors' interest in protecting the Accuser's privacy and their own contractual rights outweighs the right of access under either standard.

---

[3] Although Fed. R. Civ. P. 24(c) technically requires that the intervenor provide a proposed pleading (*see id.*), that requirement is relaxed where, as here, an intervenor seeks to intervene only for a limited purpose. *See T.R. Driscoll*, 2011 WL 3809216, at *2 n.2.

13

### 1. Sealing is Warranted Under the Common Law Standard

While the Fourth Circuit has not definitively ruled on the subject, case law from the Circuit suggests "that only a common law right of access, as opposed to the First Amendment right of access, attaches to a complaint." *U.S. Tobacco Inc. v. Big S. Wholesale of Va., LLC*, No. 5:13 Civ. 537, 2013 WL 6145549, at *3 (E.D.N.C. Nov. 21, 2013) (citing *Am. Civil Liberties Union v. Holder*, 652 F. Supp. 2d 654, 662 (E.D. Va. 2009)); *see also Spence v. ITC Deltacom Commc'ns, Inc.*, No. 5:07 Civ. 5, 2007 WL 9718658, at *2 (E.D.N.C. July 30, 2007) (applying only common law right of access to complaint where "it is not verified and the portions of the complaint sought to be sealed are not necessary to an understanding of the claims"). Under the common law standard, the "presumption of access may be overcome if competing interests outweigh the interest in access…" *Stone*, 855 F.2d at 179. That is the case here.

Plaintiff—and, by extension, the public—have little interest in maintaining the information in the Complaint that concerns the Accuser in the public eye. These allegations bear little, if any, importance to the Complaint, except to identify (*see* Dk. No. 1 ¶ 36 n.18), and then harass, the Accuser. *Id.* ¶ 52. The very same claims could have been made without any reference to her at all, and certainly could be made by keeping her anonymous. Indeed, all that these allegations appear to do is "gratify private spite or promote public scandal," which the Supreme Court has specifically observed should "bow[] before the power of the court" to seal. *Nixon*, 435 U.S. at 598 (citing *In re Caswell*, 18 R.I. 835, 836, 29 A. 259 (1893)).

In contrast, courts routinely seal information like the confidential information protected by the Agreement that is at issue here, particularly where the material involves non-parties. *See, e.g., Lifenet Health v. Lifecell Corp.*, No. 2:13 Civ. 486, 2015 WL 12517430, at *4 (E.D. Va. Feb. 12, 2015) (non-disclosure agreements aimed at protecting third-party information warranted

the sealing of that information); *see also Thomas v. Delmarva Power & Light Co.*, No. 15 Civ. 433, 2016 WL 9685173, at *3 (D. Md. Dec. 12, 2016) (redacting from summary judgment filings in employment case "all information regarding the identity of the alleged comparators and witnesses"); *ITC Deltacom*, 2007 WL 9718658, at *2 (sealing of allegations in complaint was appropriate where information concerned matters that arose out of settlement agreement between plaintiff and her employer); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) (noting that courts consistently grant protective orders to protect confidential settlement agreements); *Bank of Am., N.A. v. Hensley Props., L.P.*, No. 07 Civ. 1584, 2008 WL 2724875, at *4-5 (E.D. Cal. July 11, 2008) (granting motion to seal settlement agreement with third-party). The information underlying the Agreement—in particular the identity of the Accuser—warrants the same treatment.

### 2. Sealing is Warranted Under the First Amendment Standard

However, even if the stricter First Amendment standard were applied, sealing would still be appropriate. As courts in this Circuit have observed, "the individual constitutional right to privacy" is among "the most clearly articulated examples of such an overriding non-governmental interest in the First Amendment context." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580-81 (E.D. Va. 2009) (citing *Press-Enter. Co. v. Sup. Ct. of Cal. For Riverside Cnty.*, 478 U.S. 1, 9 n.2 (1986) (privacy interests of "victims of sex crimes ... may justify closing certain aspects of a criminal proceeding")); *Doe v. Public Citizen*, 749 F.3d 246, 269 (4th Cir. 2014) (internal citation omitted.); *Corl v. Burlington Coat Factory of N. Carolina, LLC*, No. 10 Civ. 406, 2011 WL 2607942, at *3 (M.D.N.C. June 30, 2011) ("The court concludes that the interest in protecting the personal privacy of Defendant's employees

represents a compelling interest sufficient to overcome both the common law and First Amendment right of access…").

Indeed, it is the First Amendment that actually counsels *in favor of* sealing in this case. Inherent in the First Amendment is an "aspect of anonymity in protecting free speech." *Lefkoe v. Jos. A. Bank Clothiers, Inc.,* 577 F.3d 240, 248 (4th Cir. 2009). As the Supreme Court has recognized, anonymity is often critical in encouraging people to come forward without the fear of retaliation. *See McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357 (1995) (noting importance of anonymity in encouraging individuals to come forward without the fear of retribution). This has been particularly important in the more recent wave of reporting concerning harassment in the workplace, where a level of confidentiality is often required to ensure that victims will report instances of harassment. *See* Dina Gerdeman, *Sexual Harassment: What Employers Should do About #MeToo,* FORBES (April 11, 2018, 2:20 PM), https://www.forbes.com/sites/hbsworkingknowledge/2018/04/11/sexual-harassment-what-employers-should-do-about-metoo/#6bb4a7d22acb (noting the importance of allowing employees to make anonymous complaints in order to encourage people to come forward and avoid retaliation toward victims).

In light of these principles, IPG has adopted practices that seek to stop harassment in the workplace and encourage their employees to come forward (*see* Wogan Decl., Ex. D) and sought the protections of the Agreement to ensure the Accuser's privacy. *See id.*, Ex. C. Allowing Plaintiff, by his Complaint, to override these protections will chill speech, discouraging future employees from reporting harassment, fearing that they, like the Accuser here, will be publicly identified and the details of their experiences exposed in public filings. The Court should avoid

this chilling effect and protect the Proposed Intervenors' compelling interests by ensuring that the Accuser's name is removed from the public record.

Furthermore, the proposed redactions are no more than necessary to protect the contractual and inherent privacy interests at stake, and, given Plaintiff's filing, there are no reasonable alternatives sufficient to protect these interests.

**III.     This Court Should Order that Further Filings Redact any Identifying Information**

As the Complaint suggests, the investigation into Plaintiff turned up additional accusers. Dk. No. 1 ¶ 46. Accordingly, in addition to sealing the current Complaint, any Order should apply both to future filings and to the Accuser and others who may be identified in discovery.

Fed. R. Civ. P. 26(c)(1)(G) of authorizes a court, for good cause shown, to issue an order "protect[ing] a party from annoyance, embarrassment, oppression, or undue burden or expense," including, for example, by setting conditions governing the disclosure of "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(1)(G). As the Fourth Circuit has noted, the entry of an "appropriate protective order can alleviate problems concerning both confidentiality and scope of the discovery material produced in a particular case." *Virmani v. Novant Health Corp.*, 259 F.3d 284, 288 n.4 (4th Cir. 2001). Accordingly, a court may enter an order that protects delineated categories of documents if the court finds "good cause exists to protect each category" of documents. *U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 566 (E.D. Va. 2010).

In light of Plaintiff's obligations under the Agreement and the privacy concerns at issue in this action, the Proposed Intervenors request that this Court enter a protective order requiring that identifying information regarding any person who was part of the Proposed Intervenors' investigation into Plaintiff, or who otherwise complained to the Proposed Intervenors about

Plaintiff be deemed confidential. This sort of protective order is regularly entered by courts in this Circuit. *See Lefkoe*, 577 F.3d at 249 (affirming entry of protective order limiting disclosure of identity to parties and their attorneys); *see also Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 690 n.2 (4th Cir. 2007) (sealing identity of "complaining private citizen" pursuant to protective order); *see also Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016) (no prejudice to defendant in allowing plaintiff to proceed anonymously as defendants "are fully aware of Doe's identity"). Indeed, just last year, a court in this District entered a similar protective order in a case brought by Plaintiff's counsel against IPG. *See* Wogan Decl., Ex. E. Such an order is equally warranted here.

## **CONCLUSION**

Defendants respectfully request that the Court grant their motion: (1) permitting the Proposed Intervenors to intervene for a limited purpose; (2) sealing the Complaint and/or filing in its stead the Proposed Complaint; and (3) ordering that information that identifies Plaintiff's accusers be deemed confidential and not filed publicly.

Dated: October 8, 2019                    Respectfully submitted,

                                                                 THE INTERPUBLIC GROUP OF
                                                                 COMPANIES, INC.

                                                                 and

                                                                 THE MARTIN AGENCY

                                                                 By Counsel

/s/
David B. Lacy (VSB #71177)
Lauren E. Fisher White (VSB #80360)
CHRISTIAN & BARTON, L.L.P.
909 East Main Street, Suite 1200
Richmond, Virginia 23219-3095
Telephone: (804) 697-4100
Facsimile: (804) 697-4112
dlacy@cblaw.com
lfwhite@cblaw.com

Maura J. Wogan*
Nicole Bergstrom*
FRANKFURT KURNIT KLEIN & SELZ, PC
28 Liberty Street
New York, New York 10005
Telephone: (212) 980-0120
Facsimile: (212) 593-9175
mwogan@fkks.com
nbergstrom@fkks.com
*pro hac vice admission pending

*Counsel for Defendants*
*The Interpublic Group of Companies, Inc.*
*and The Martin Agency*

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of October, 2019, I will electronically file a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the registered participants as identified on the NEF to receive electronic service, including:

>Steven S. Biss (VSB #32972)
>300 West Main Street, Suite 102
>Charlottesville, Virginia 22903
>Telephone:   (804) 501-8272
>Facsimile:    (202) 318-4098
>Email:          stevenbiss@earthlink.net
>
>*Counsel for Plaintiff Joe Alexander*

>/s/
>David B. Lacy (VSB #71177)
>Lauren E. Fisher White (VSB #80360)
>Counsel for Defendant
>The Interpublic Group of Companies, Inc.
>CHRISTIAN & BARTON, L.L.P.
>909 East Main Street, Suite 1200
>Richmond, Virginia 23219-3095
>Telephone: (804) 697-4100
>Facsimile: (804) 697-4112
>dlacy@cblaw.com
>lfwhite@cblaw.com