# EXHIBIT C

## CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE

CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE between The Martin Agency, Inc. ("**Employer**") and Joseph Alexander ("**Employee**"). In consideration of the mutual covenants herein contained, the parties agree as follows:

1. <u>End of Employment</u>. Employee's employment with Employer or any subsidiary thereof has ended effective December 1, 2017 ("**Termination Date**"). Employee's coverage elected under Employer's medical, dental and vision plans will end on December 31, 2017, unless Employee chooses to extend such coverage under COBRA.

2. <u>CAP Payment</u>. Subject to Employee's execution and non-revocation of, and compliance with this Agreement and Release, at the time specified pursuant to the Interpublic Capital Accumulation Plan (CAP), Employer shall: (a) pay to Employee the amounts credited to his CAP account pursuant to his Participation Agreement for 2015 and 2016, and any accumulated interest thereon, less required federal, state and local withholdings; and (b) agree to waive the non-compete contained in Paragraph 7(a) of Employee's CAP Participation Agreement. Provided, however, that Employer will not make any such payment or waive the non-compete if: (i) Employee engages in any conduct in violation of this Agreement (including Attachment A); or (ii) if any claim is made, following execution of this Agreement, alleging that Employee engaged in misconduct during the course of his employment, and Employer determines that such claim is credible.

The above-referenced payments are in full satisfaction of any and all claims Employee may have against Employer, and exceed in value any payments to which Employee may otherwise be entitled.

3. <u>Release of Claims</u>. By signing this Agreement and Release, Employee, on behalf of himself and his current, former, and future heirs, executors, administrators, trustees, attorneys, agents and assigns, hereby fully and without limitation releases, covenants not to sue, and forever discharges Employer, The Interpublic Group of Companies, Inc. ("**Interpublic**"), and their respective parents, subsidiaries and affiliates, officers, directors, employees, shareholders, members, agents, attorneys, trustees, fiduciaries, representatives, benefit plans and plan administrators, successors and/or assigns, and all persons or entities acting by, through, under, or in concert with any or all of them (collectively, the "Releasees") from all rights, claims, demands, liabilities, actions and causes of action, whether in law or in equity, suits, damages, losses, attorneys' fees, costs and expenses, of whatever nature whatsoever that Employee now has or has ever had, whether known or unknown or based on facts now known or unknown, fixed or contingent, suspected or unsuspected, against the Releasees, occurring from the beginning of time up to and including the date that Employee executes this Agreement and Release, that arise out of, or are in any way related to, Employee's employment by Employer or the termination of Employee's employment with Employer.

Without limiting the foregoing, Employee understands and agrees that the foregoing release provisions include, without limitation:

 a. any claims for wrongful termination, defamation, invasion of privacy, intentional infliction of emotional distress, or any other common law claims;

 b. any claims for the breach of any written, implied or oral contract between Employee and Employer, including but not limited to any contract of employment;

 c. any claims of discrimination, harassment or retaliation based on such things as age, national origin, ancestry, race, religion, sex, sexual orientation, or physical or mental disability or medical condition;

 d. any claims for payments of any nature, including but not limited to wages, overtime pay, vacation pay, severance pay, commissions, bonuses and benefits or the monetary equivalent of benefits, but not including any claims for unemployment or workers' compensation benefits, or for the consideration being provided to Employee pursuant to Paragraph 2 of this Agreement; and

 e. all claims that Employee has or that may arise under the common law and all federal, state and local statutes, ordinances, rules, regulations and orders, including but not limited to any claim or cause of action based on the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Americans with Disabilities Act, the Civil Rights Acts of 1866, 1871 and 1991, the Rehabilitation Act of 1973, the National Labor Relations Act, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, Executive Order 11246, and any state laws governing employee rights, as each of them has been or may be amended.

This Agreement and Release shall be binding upon and inure to the benefit of Employee and the Releasees and any other individual or entity who may claim any interest in the matter through Employee. Employee also acknowledges that he has not assigned any of his rights to make the aforementioned claims or demands, and represents that he has legal authority to execute this contract with its waiver and release provisions. Employee also acknowledges and represents that he has not filed nor will he file any lawsuits based on claims or demands that he has released herein.

 4. Attorney Review. Employee is hereby advised that he should consult with an attorney prior to executing this Agreement.

 5. Review Period. Employee is also advised that he has twenty-one (21) days from the date this Agreement is delivered to him within which to consider whether he will sign it, which is an adequate and reasonable period of time. To the extent he executes this Agreement before the expiration of the review period, he has done so knowingly and voluntarily, and with the understanding that he has waived the remainder of the review period.

Changes to this Agreement, whether material or not, will not restart the review period.

In order to receive the termination payment described in Paragraph 2 above, Employee must sign, date and return this Agreement and Release to Employer (c/o Ileana Kutler, IPG) not later than December 27 2017. Please note that if Employee does not return the signed and dated Agreement and Release to Employer by midnight on that date, the offer of payment described in Paragraph 2 above will be automatically withdrawn.

6. <u>Revocation Period</u>. Employee may revoke this Agreement within seven (7) days after he has signed it by notifying Employer in writing that he has revoked this Agreement. Such notice shall be addressed to Employer c/o Ileana Kutler, and must be received by Employer before the end of the revocation period. This Agreement shall not be effective or enforceable in accordance with its terms until the eighth day after Employee signs, when the 7-day revocation period has expired.

7. <u>Intellectual Property Rights</u>. Employee acknowledges and agrees that all concepts, writings and proposals submitted to and accepted by Employer ("**Intellectual Property**") which relate to the business of Employer and which have been conceived or made by him during the period of his employment, either alone or with others are the sole and exclusive property of Employer or its clients. As of the date hereof, Employee hereby assigns in favor of Employer all the Intellectual Property covered by this paragraph. On or subsequent to the date hereof, Employee shall execute any and all other papers and lawful documents required or necessary to vest sole rights, title and interest in the Employer or its nominee of the Intellectual Property.

9. <u>Non-Admission</u>. This Agreement and Release shall not in any way be construed as an admission by Employer of any liability for any reason, including, without limitation, based on any claim that Employer has committed any wrongful or discriminatory act.

10. <u>Non-Disparagement and Non-Retaliation</u>. Employee agrees that he will not say, write or cause to be said or written, any statement that may be considered defamatory, derogatory or disparaging of any of the Releasees. Employee further agrees that he will not do or say anything that would be inconsistent with the Requirements of Non-Retaliation and Confidentiality that are attached at Attachment A and incorporated into this Agreement and Release.

11. <u>Confidentiality/Company Property</u>. Employee acknowledges that he has had access to confidential, proprietary business information of Employer as a result of employment, and Employee hereby agrees not to use such information personally or for the benefit of others. Employee also agrees not to disclose to anyone any confidential information at any time in the future so long as it remains confidential. Employee further agrees to keep the terms and the existence of this Agreement and Release confidential and not to discuss it with anyone other than his attorney, tax advisor, spouse, or as may be required by law, and for the first three categories, only after confirming such persons will similarly abide by confidentiality. Employee represents that he has returned all Employer property in his possession. In the event that Employer determines that Employee owes any money to Employer,

3

Employer will provide notice thereof to Employee and Employee hereby authorizes Employer to deduct such amounts from any further payments to Employee.

12. <u>Cooperation.</u> Employee agrees to make himself available to cooperate fully with Employer, its parents and affiliates, and their legal counsel in any pending or future legal proceedings or investigatory matters involving issues in which Employee was involved during his employment with Employer.

13. <u>Non-Solicitation/Non-Service of Clients and Employees</u>. For a period of two (2) years after Employee's termination, regardless of the reason therefor, in consideration of the payments in Paragraph 2 hereof, Employee shall not: (a) directly or indirectly solicit on Employee's own behalf or on behalf of any other person, firm, or corporation, services similar to those Employee provided while employed by Employer from or for any person or entity which is a client of the Employer, that was a client of Employer in the two (2) years prior to Employee's Termination Date, or that was a prospective client of Employer with whom Employee had contact, and for which Employee materially participated in Employer's marketing efforts to such prospective client, within two (2) years prior to Employee's Termination Date (collectively, "**Client**") or to induce any such Client to cease to engage the services of Employer or to use the services of any entity or person that competes directly with a material business of Employer, where the identity of such Client, or the Client's need, desire or receptiveness to services offered by the Employer is known by Employee as a part of his employment with Employer; (b) perform any services relating to advertising, marketing, research, public relations or related services for any such Client; (c) directly or indirectly solicit any employee who was employed by Employer within one (1) year of Employee's Termination Date of the Employer to leave such employ to enter the employ of Employee or of any person, firm or corporation with which Employee is then associated, or induce or encourage any such employee to leave the employment of Employer or to join any other company, or hire any such employee, or otherwise interfere with the relationship between the Employer and any of its employees; or (d) engage in any conduct that in any way interferes with the employment relationship between Employer and any of its employees or clients. Employee acknowledges that the above restrictions are reasonable and necessary to protect Employer's legitimate business interest.

14. <u>Entire Agreement; No Other Promises</u>. Except as to any confidentiality, non-compete and/or non-solicitation agreements signed by Employee upon or during his employment with Employer (but not the non-compete provision in Employee's CAP Participation Agreement, as noted in Paragraph 2 above), Employee hereby acknowledges and represents that this Agreement and Release contains the entire agreement between Employee and Employer, and it supersedes any and all previous agreements concerning the subject matter hereof. Employee further acknowledges and represents that neither Employer nor any of its agents, representatives or employees have made any promise, representation or warranty whatsoever, express, implied or statutory, not contained herein, concerning the subject matter hereof, to induce Employee to execute this Agreement and Release, and Employee acknowledges that he has not executed this Agreement and Release in reliance on any such promise, representation or warranty.

15. _Equitable Relief._ Employee acknowledges that a remedy at law for any breach or attempted breach of this Agreement and Release will be inadequate, and agrees that Employer shall be entitled to specific performance and injunctive and other equitable relief in the case of any such breach or attempted breach. It is also agreed that, in addition to any other remedies, in the event of a breach of this Agreement and Release by Employee, Employer may withhold and retain all or any portion of the severance payments.

16. _Severability._ If any term or condition of this Agreement and Release shall be held to be invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, this Agreement and Release shall be construed without such term or condition.

17. _Choice of Law and Forum._ This Agreement and Release shall be construed and enforced in accordance with, and governed by, the laws of the State of New York, without regard to its choice of law provisions. Any dispute under this Agreement and Release shall be adjudicated by a court of competent jurisdiction in the city of Richmond, VA.

18. _Amendment._ This Agreement and Release may not be amended or modified in any way, except pursuant to a written instrument signed by both parties.

19. _Counterparts._ This Agreement and Release may be signed in counterpart, with signature pages electronically exchanged and copied to the other party.

20. _Headings._ The headings contained in this Agreement are for reference purposes only and will not affect in any way the interpretation of this Agreement.

21. _Construction._ This Agreement and Release shall be construed according to its terms, neither for or against either party, and without regard to the drafter of the Agreement.

HAVING READ AND UNDERSTOOD THE RELEASE, CONSULTED COUNSEL OR VOLUNTARILY ELECTED NOT TO CONSULT COUNSEL, AND HAVING HAD SUFFICIENT TIME TO CONSIDER WHETHER TO ENTER INTO THIS AGREEMENT AND RELEASE, THE PARTIES HERETO HAVE EXECUTED THIS AGREEMENT AND RELEASE AS OF THE DAY AND YEAR FIRST WRITTEN BELOW. FURTHER, AND NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH IN THIS AGREEMENT, NOTHING CONTAINED HEREIN SHALL BE CONSTRUED AS PROHIBITING EMPLOYEE FROM PROVIDING INFORMATION CONCERNING POSSIBLE VIOLATIONS OF FEDERAL, STATE, OR LOCAL LAW OR REGULATION TO ANY GOVERNMENT, REGULATORY OR SELF-REGULATORY AGENCY OR ENTITY UNLESS SUCH INFORMATION IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE.

Joseph Alexander

Dated: 12/12/17

The Martin Agency, Inc.

By: _____

Title: SVP, General Counsel & Secretary

Dated: 1/16/18

## ATTACHMENT A

### REQUIREMENTS OF NON-RETALIATION AND CONFIDENTIALITY

(1) A person accused of inappropriate workplace conduct, such as sexual harassment, may not retaliate, in any way, against any employee who made such a complaint.

(2) Non-retaliation is particularly important when the person subject to the allegations is in a position of leadership and authority.

(3) Retaliation is broader than a tangible job action, like a demotion or pay cut.

(4) Retaliation includes any action that would make a reasonable person hesitant to make a claim of harassment.

(5) Retaliation includes, but is not limited to, conduct such as:
- Confronting or communicating with a complainant who does not wish such contact, as here, whether directly or indirectly.
- Disparaging remarks about the complainant, either written or oral.
- Efforts to negatively impact the complainant's reputation or profession, such as "blackballing," negative comments, or unfavorable references.
- Any intimidation, or further harassment, whether within or outside the workplace.

(6) You are expected to maintain the confidentiality of the Agency's internal investigations.
- This means you will not disclose the identity of a complainant to any person(s) except as permitted by law, or to (a) your spouse and (b) your attorney(s), and even then only after making sure they understand, and agree to abide by, this confidentiality requirement.
- This prohibits not just overt or deliberate disclosures. This includes any disclosure by inference or innuendo.
- If an accidental or inadvertent disclosure is made, you should immediately advise Meg Garner, VP/Director of HR, (as soon as practical, but in no event more than twelve (12) hours later), and cooperate and comply with all reasonable requests to address any harm caused by the disclosure.

(7) You will keep the allegations made by complainant(s) against you confidential, as they may personally identify the complainant(s) by description or inference. The parameters set forth in Section (6) shall apply.