IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| JOE ALEXANDER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-688-JAG |
| | ) | |
| | ) | |
| DIET MADISON AVENUE | ) | |
| et al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# MEMORANDUM IN OPPOSITION
# TO MOTION OF NON-PARTIES, MARTIN AND IPG,
# TO INTERVENE, SEAL OR FOR A PROTECTIVE ORDER

Plaintiff, Joe Alexander ("Plaintiff" or "Joe"), by counsel, pursuant to the Court's Order entered October 10, 2019 [*ECF No. 14*] and Local Civil Rule 7(F), respectfully submits this Memorandum in Opposition to the motion of non-parties, The Martin Agency, Inc. ("Martin") and The Interpublic Group of Companies, Inc. ("IPG"), for leave to intervene, to seal parts of the complaint and for a protective order [*ECF No. 5*].

## I.  INTRODUCTION

Martin and IPG do not care about confidentiality.   Did they care about confidentiality in October/November 2017, when they secretly disclosed a confidential settlement agreement and divulged confidential HR files/reports to Diet Madison Avenue – the **#MeToo** group on a crusade against the advertising industry's top white, male, chief creative officers – disclosures that got Joe put on the DMA "master" hit list?  No.

Did Martin and IPG do anything to stop Sissy Estes ("Estes"), a former employee of Martin bound by a non-disclosure agreement, or Tara Hanley, counsel for the woman who falsely accused Joe of misconduct in 2011, from disclosing the terms of a confidential settlement agreement to Defendants, Adweek and Coffee?  No.  Did Martin or IPG intervene when Estes freely divulged confidential employment matters to reporters from the *Wall Street Journal*[1] and the *Richmond Times-Dispatch*?[2] [*ECF No. 1 ("Complaint"), ¶¶ 8, 9, 66*].  No.  Did they care when Estes posted confidential facts about Joe's termination (that she secretly obtained from confederates at Martin) to her Facebook on November 30, 2017?



No.  Did Martin and IPG care in December 2017, when they leaked an "internal" memo to Adweek and Coffee – without Joe's knowledge – that falsely accused Joe of making "people in our company" feel "unsafe and unheard" and that stated that the "behavior that Martin's former CCO, Joe Alexander, is accused of is inexcusable.  That's why the only alternative was for him to leave The Martin Agency.  That decision was ours"?  No.  [https://www.adweek.com/agencies/the-martin-agency-releases-internal-memo-

---

[1]      [https://www.wsj.com/articles/ousting-an-accused-harasser-wasnt-enough-ad-agency-staff-wanted-to-know-why-1513161001].

[2]      [https://www.richmond.com/business/local/amid-new-allegations-of-misconduct-former-employees-discuss-the-culture/article_b0930ee2-c672-55d6-8aca-ef14836999d9.html].

[promising-to-get-better-in-wake-of-harassment-scandal/](promising-to-get-better-in-wake-of-harassment-scandal/) (**"The Martin Agency Releases Internal Memo Promising to 'Get Better' in Wake of Harassment Scandal"**)].

Now they care.

"Courage" is the mental or moral strength to venture, persevere, and withstand danger, fear, or difficulty. [[https://www.merriam-webster.com/dictionary/courage](https://www.merriam-webster.com/dictionary/courage)]. Courage is synonymous with bravery, valor and heroism. Sir Winston Churchill stated that "courage is rightly esteemed the first of human qualities because it is the quality that guarantees all others." **Bearing false witness against another is not "courageous"**. Rather, it is a supreme act of cowardice and immorality. Those who bear false witness do not deserve to have their identities concealed and their actions cloaked in secrecy and shrouded in mystery.

Due process demands that the persons responsible for destroying Joe Alexander's life be held accountable.

## II.   <u>MOTION TO INTERVENE</u>

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure. Rule 24 provides two mechanisms of intervention: Rule 24(a), intervention by right, in which the court must add the movant as a party in certain circumstances; and, Rule 24(b), intervention by permission, in which the court exercises discretion to allow or bar intervention on the basis of a "common question of law or fact".

Martin and IPG seek to intervene under Rule 24(a)(2). In order to demonstrate a right to intervene in an action, the movant must show: 1) a "significantly protectable interest" in the subject matter of the action; 2) that the protection of this interest would be impaired without the movant's intervention; and, 3) that the movant's interest is not

adequately represented by the existing parties. *Teague v. Bakker*, 931 F.2d 259, 260-261 (4th Cir. 1991) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)).  An interest qualifies as "significantly protectable" when "the intervenor stands 'to gain or lose by the direct legal operation of the district court's judgment' on the plaintiff's complaint." *Cooper Techs., Co. v. Dudas*, 247 F.R.D. 510, 515 (E.D. Va. 2007) (quoting *Teague*, 931 F.2d at 261) (internal quotation marks omitted)).

Even reading the motion to intervene liberally, the Court should deny intervention.  As reflected in Rule 10(a) of the Federal Rules of Civil Procedure,[3] there is a strong presumption of open and transparent judicial proceedings.  This presumption of openness is well grounded in our nation's laws.  "Courts have long held that the First Amendment protections of freedom of speech and press safeguard the public's right to attend trials, which must be 'open to the public absent an overriding and clearly articulated interest to the contrary.'" *Doe v. Pittsylvania Cty.*, 2012 WL 379554, at * 3 (quoting *Doe 1 v. Merten*, 219 F.R.D. 387, 390-391 (E.D. Va. 2004)).  Martin and IPG will lose nothing if the Court enters judgment on the plaintiff's complaint against DMA, the DMA Doe Defendants, Adweek and/or Coffee.  Although the cause of Joe's termination is an issue in this case and the "Accuser" will be one of many witnesses, neither Martin nor IPG nor the Accuser nor any of the Defendants have a "significantly protectable" interest in keeping the Accuser's name a secret.  In fact, the public has a

---

[3]     Rule 10(a), in pertinent part, provides that "[e]very pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation.  The title of the complaint must name all the parties".  The purpose of this rule "is to 'apprise the parties of their opponents and to protect the public's legitimate interest in knowing all the facts and events surrounding court proceedings.'" *Doe v. Pittsylvania Cty.*, 2012 WL 379554, at * 3 (W.D. Va. 2012) (quoting *Doe v. Hallock*, 119 F.R.D. 640, 643 fn. 1 (S.D. Miss. 1987)).

significant interest in knowing the identity of the Accuser, just as it has an interest in knowing the identity of the Accused.[4]  The Accuser is not a child, her name is not a matter of utmost intimacy, and there is no evidence that she faces any risk of retaliation or loss beyond general embarrassment and general reputational harm.  Significantly, the identity of the Accuser was likely voluntarily disclosed to the Defendants by Martin and by former Martin employees, including Sissy Estes.  And, Martin and IPG themselves voluntarily publicized the results of the so-called "internal investigation" to Adweek and Coffee. [*See, e.g., Complaint, ¶¶ 11, 34*].

### III.  MOTION TO SEAL

Local Civil Rule 5(C) underscores that motions to file documents under seal are "disfavored and discouraged."  A party seeking to file a document under seal "must make a good faith effort to redact or seal only as much as necessary to protect legitimate interests."

Here, Martin and IPG only seek to seal the name of the "Accuser".

#### A.  *There Is No Just Cause To Seal Any Part Of The Complaint*

First, the names of "accusers" are not confidential.

The IPG Code of Conduct "require[s]" an employee to report any "situation that may involve a violation of the Code, IPG policy or any applicable law" to that employee's "immediate manager". [*IPG Code of Conduct, p. 7*].[5] Page 12 of the Code of Conduct expressly states:

---

[4]   Martin and IPG had no problem doxxing Joe and publishing his name and the allegations of "sexual harassment" levelled against him.  Sadly, Martin and IPG would apply a different standard to Joe's "Accuser".

[5]   A true copy of the IPG Code of Conduct, applicable to all employees of Martin, is attached as *Exhibit "A"*.

> If you are being harassed or know or suspect someone else is, report your concerns immediately to a manager you trust, your local Human Resources Director, the Corporate Human Resources Officer, the IPG Legal Department, the Chief Risk Officer or the Alertline. You will not experience retaliation for making a good faith report. For more information, see the *Anti-Harassment and Equal Employment Opportunities Policy* (SP&P 400).

The Code further expressly states that:

> If you are uncomfortable talking to your manager or still have concerns after doing so, you should consult another manager you trust or any of the following contacts:
>
> — Your local Human Resources Director
> — The IPG Human Resources Department
> — The IPG Legal Department
> — The Chief Risk Officer

[*Code of Conduct, p. 7*].  **Nowhere** in the IPG Code of Conduct does it state, directly or indirectly, that reports of misconduct are "confidential" or that the names of complainants will be kept confidential.  It's not there.  No person who reports a potential "violation of the Code" has any expectation of privacy.

**The Court should not re-write the IPG Code of Conduct and create a veil of confidentiality that even IPG chose not to create**.

Second, the confidential separation agreement and general release [*ECF No. 9-4*] that IPG and Martin induced Joe to sign December 2017 does not prevent Joe from identifying the "Accuser" in a legal complaint and it does not require that any part of any legal pleading be sealed.  The document does not even define the word "confidential".  The names of the women who falsely accused Joe – some decades after the fact – are not "confidential, proprietary business information of Employer" within the meaning of § 11 of the document (titled "Confidentiality/Company Property").  In paragraph 10 of the document, Joe promised not to do or say anything that would be "inconsistent" with Attachment A to the document.  Attachment A does not prohibit Joe from naming any accuser in a legal complaint – nor could it.  Attachment A broadly states that "you will not disclose the identity of a complainant to any person(s) *except as permitted by law*".  The law permits Joe to take legal action against any person as a result of the publication of false and defamatory statements, tortious interference with contract, common law conspiracy, and any number of other torts.  To the extent that Attachment A prohibits Joe from identifying an accuser in a legal pleading or testifying about that person at a deposition or at trial, it is violative of public policy, and, therefore, void.

Third, Martin committed the first material breach of Attachment A when it publicized the results of its "internal investigation" to Defendants Adweek and Coffee and to the *Wall Street Journal* and to the *Richmond Times-Dispatch*. It is self-serving, disingenuous and contrary to law for Martin and IPG to breach Attachment A, and then argue that Joe can do nothing about it. Under familiar principles, Martin's first material breach precludes it from enforcing Attachment A against Joe. *See, e.g., Mulugeta v. Ademachew*, 2019 WL 3848940, at * 17 (E.D. Va. 2019) (citing *Virginia Electric and Power Company v. Bransen Energy, Inc.*, 850 F.3d 645, 655 (4th Cir. 2017) (a party who commits the first breach of contract, if material, "is not entitled to enforce the contract" and thereby excuses the nonbreaching party from performance) (citation and quotaions omitted).

Fourth, the evidence will show that IPG and Martin procured the "confidential separation agreement and general release" by fraud. Martin and IPG fraudulently concealed from Joe the fact that Martin leaked the 2013 confidential settlement agreement and other confidential HR files/reports to DMA. Martin and IPG's fraud vitiates the "confidential separation agreement and general release". *See Dairyland Insurance Co. v. Chapman*, 1973 WL 165683, at * 2 (Richmond Cir. 1973) (fraud vitiates every contract into which a principal enters).

Finally, contrary to IPG and Martin's suggestion, the important interest recognized by both the common law right of access and First Amendment right of access to court records are not overcome by Martin and IPG's desire to hide the identity of the "Accuser". Although the complaint is not verified – and it is not required to be – the name of the "Accuser" and her long relationship with Joe is necessary to an

understanding and explanation of why Joe was terminated. The "Accuser" is not a "victim" of anything. Given the text messages identified in Joe's Complaint, it is highly likely that the claim of "sexual harassment" and "inexcusable" behavior publicized by Martin and IPG to the press was fabricated. Joe has no desire to harass the "Accuser", but she is a central witness in this action.

### III.   <u>THERE IS NO NEED FOR ENTRY OF A PROTECTIVE ORDER</u>

Plaintiff's has never objected to the entry of a protective order regarding any truly "confidential information" that the defendants or any third-party may be required to produce.

However, there are numerous reasons why the name of Joe's alleged "Accuser" and the identity of the DMA Doe Defendants for that matter should not be kept secret. First, secrecy runs counter to the twin goals of "transparency" and "integrity" espoused and reiterated throughout IPG's Code of Conduct and that are integral to the common law and First Amendment right of access to judicial records. According to IPG, the Code of Conduct "serves as a statement of our continued commitment to acting with transparency and integrity in all of our business dealings." The Code of Conduct "forms the foundation of how we should do business on a day-to-day basis." [*Code of Conduct, pp. 3-4*]. All employees of IPG sign the Code of Conduct and, therefore, agree to be entirely "transparent" in their dealings.

Second, the IPG Code of Conduct is clear:  a person who becomes aware of a "situation that may involve a violation of the Code, IPG policy or any applicable law or regulation" is "<u>required</u>" to report it. Managers who receive a report "of a situation that is unethical, or suspect that one exists" <u>must</u> "promptly notify their Human Resources

Director, the Corporate Human Resources Officer, the IPG Legal Department or the Chief Risk Officer". [*Code of Conduct, p. 12*].  Although a person may choose to make his or her report "anonymously", nowhere in the Code does it state, directly or indirectly, that the names of complainants and/or the substance of a "good-faith report" will be kept secret.  **Simply put, the identity of the accuser(s) and any report is not confidential**.

Third, the Code covenants, warrants and represents that IPG and Martin "aim to treat all of our colleagues with fairness, dignity and respect".  Concealing the names of accuser(s) and anonymous posters, but publicizing unproven allegations and the names of the accused, runs counter to this stated ideal and to the salutary policies embodied in the Confrontation Clause of the Sixth Amendment to the United States Constitution. Concealment also materially prejudices Joe and others like him, who are fundamentally deprived of a full and fair opportunity to defend themselves.

Fourth, disclosure of the names of the false accuser(s) will facilitate the quest for Truth.

Fifth, civilized society does not work unless those who bear false witness, defame and interfere with contracts are held accountable.  There is no good cause why the names of Joe's "Accuser" or any accuser or the identity of the DMA Doe Defendants should be protected at all.  They are not children.  They may be embarrassed by the misrepresentations they made about Joe, but this supplies no ground to hide their identities.

## CONCLUSION

IPG and Martin have one goal:  to prevent Joe from discovering the Truth about what happened to him in November/December 2017.

Joe has competing goals:  to discover the Truth, protect the liberty interest he has in his name and reputation, and seek redress for the harm he has suffered.

The business of protecting false accusers is bad business, and it should not confused with the important mission of protecting true victims – like Joe – whose entire life was destroyed without even the slightest due process or care.

For the reasons stated above, Plaintiff respectfully requests the Court to deny Martin and IPG's motion to intervene, seal, and for a protective order.

DATED:        October 17, 2019

JOE ALEXANDER

By:___*/s/ Steven S. Biss*_____
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:    (804) 501-8272
        Facsimile:    (202) 318-4098
        Email:        **stevenbiss@earthlink.net**

        *Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2019 a copy of the foregoing was filed electronically using the Court's CM/ECF System, which will send notice to counsel of record and all interesting parties.

By:___/s/Steven S. Biss_____
      Steven S. Biss (VSB # 32972)
      300 West Main Street, Suite 102
      Charlottesville, Virginia 22903
      Telephone:    (804) 501-8272
      Facsimile:    (202) 318-4098
      Email:        **stevenbiss@earthlink.net**

      *Counsel for the Plaintiff*